Jason M. Ingber (SBN 318323)
**LEVI & KORSINSKY, LLP**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, California 90010-2513
Telephone: (213) 8005-8373
Email: jingber@zlk.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

ALBERT SANCHEZ and MARY SOBON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UTZ QUALITY FOODS, LLC f/k/a UTZ QUALITY FOODS, INC., and UTZ BRANDS, INC.,

Defendant.

Case No. _______________

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Albert Sanchez and Mary Sobon, individually and on behalf of all others similarly situated, allege the following upon personal knowledge as to themselves and their own acts, and upon the investigation of counsel and information and belief as to all other matters:

## NATURE OF THE ACTION

1. Plaintiffs bring this class action against Utz Quality Foods, LLC and Utz Brands, Inc. arising from the sale of Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips (the "Product"), which Defendants sell on the representation that the Product is cooked in avocado oil.

2. The front of the package states "AVOCADO OIL" in large type directly above the flavor designation "CLASSIC SEA SALT" and the words "KETTLE STYLE POTATO

CHIPS."[1] Defendants' website tells consumers that Boulder Canyon's chips are "[m]ade with just three natural ingredients – potatoes, avocado oil, and sea salt[.]"[2] Defendants' website goes further, stating: "[t]he rich, buttery taste of avocado oil elevates the classic sea salt seasoning, making these chips a must-have snack for anyone seeking a pure, natural indulgence."[3]

3. Chemists in the Department of Food Science and Technology at the University of California, Davis extracted the oil from Defendants' chips and analyzed what it was. In two separate production lots of the Product, the oil was not compositionally consistent with avocado oil.[4]

4. This is an economic injury case. Plaintiffs do not allege that the Product caused them any physical harm. They allege that they paid a premium for a product represented to be cooked in a premium oil, and that they did not receive what Defendants represented and charged for.

5. Avocado oil is among the most expensive cooking oils on the retail market. Consumers seek it out and pay more for it. Manufacturers know this, and they place the words "avocado oil" on the front of a package precisely because those words command a higher price than the refined vegetable and seed oils that consumers increasingly seek to avoid.

---

[1] *Avocado Oil Classic Sea Salt Kettle Chips*, BOULDER CANYON, https://www.bouldercanyon.com/products/boulder-canyon-avocado-oil-sea-salt-kettle-chips (last visited September 16, 2026).

[2] *Details*, BOULDER CANYON, https://www.bouldercanyon.com/products/boulder-canyon-avocado-oil-sea-salt-kettle-chips (last visited September 16, 2026).

[3] *Id.*

[4] *Studied products AFRES.pdf*, UNIV. OF CAL., DAVIS MEDIA KIT: AVOCADO OIL FOODS (July 17, 2026), https://ucdavis.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u (last visited September 16, 2026); Natalie Lopez-Alvarez et al., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Appl. Food Rsch. 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last visited September 16, 2026).

6. Defendants did not merely print a claim on a bag. They built the Boulder Canyon avocado oil line around that claim, distinguishing it in the marketplace from ordinary potato chips fried in canola, corn, soybean, or sunflower oil, and charging accordingly.

7. The oil recovered from the Product did not match authentic avocado oil on the fatty acid and sterol markers that distinguish avocado oil from common vegetable oils. It matched the profile of refined vegetable and seed oils instead. The Product was not an isolated result. Of the twenty-eight avocado oil-labeled chip samples the researchers tested, twenty-six, or ninety-three percent, were classified as inconsistent with authentic avocado oil.[5]

8. Plaintiffs and the members of the Class paid more for the Product than they would have paid for a comparable kettle style potato chip fried in the oils the analysis indicates were actually present, and more than they would have paid had Defendants disclosed the truth.

9. Plaintiffs seek damages, restitution, injunctive relief, and the costs of this action on behalf of themselves, a Nationwide Class, a California Subclass, and a New York Subclass.

## PARTIES

10. Plaintiff Albert Sanchez is a citizen of the State of California and resides in San Francisco, California.

11. Mr. Sanchez purchased the Product at Whole Foods Market, SF OrganiCA Grocery & Delicatessen, and Sprouts Farmers Market retail locations in San Francisco, California. Plaintiff Sanchez used cash to purchase the Product in the respective retail locations. Plaintiff Sanchez purchased the product several times from July 11, 2022, to July 11, 2026.

---

[5] Natalie Lopez-Alvarez et al., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Appl. Food Rsch. 102389, § 3.1 & tbl. 1, at 3–4 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last visited September 16, 2026).

12. Before purchasing, Mr. Sanchez read the front of the package and understood the statement "AVOCADO OIL" to mean that the oil used to cook the chips was avocado oil. He understood the Product to be a healthier product than a comparable chip fried in a more heavily processed oil, and he purchased the Product on that basis.

13. Mr. Sanchez would not have purchased the Product, or would not have paid the price he paid, had he known that the oil in it was not compositionally consistent with avocado oil. He continues to shop at the retailers where the Product is sold, wishes to purchase potato chips cooked in avocado oil, and would purchase the Product again if the representation on the package were accurate. He cannot determine whether the representation is accurate by reading the package or by inspecting the chips, and he therefore remains unable to rely on Defendants' representation.

14. Plaintiff Mary Sobon is a citizen of the State of New York and resides in Stillwater, Saratoga County, New York.

15. Ms. Sobon purchased the Product at the Target retail store located at 3031 Route 50, Saratoga Springs, New York 12866. She paid by debit card. She purchased the Product on April 15, 2026, for $4.69, and she purchased the Product on multiple occasions before that date. She retains the itemized receipt for that purchase and a photograph of the package she purchased, which bears a best-by date of November 9, 2026.


11:42

View your receipt

Saratoga Springs - 518-226-0003
3031 Route 50
Saratoga Springs, New York 12866-2926
04/15/2026 01:41 PM

| | | | |
|---|---|---|---|
| **GROCERY** | | | |
| 231102798 | GG Coffee | NF | $8.99 |
| 231101933 | DUNKINDONUTS | NF | $11.49 |
| 071060646 | BOULD CANYON | NF | $4.69 |
| **LAUNDRY CLEANING AND CLOSET** | | | |
| 053002897 | Spritz | T | $3.00 |
| **NON RETAIL** | | | |
| 004100019 | TARGET BAG | NP | $0.00 |
| | Bag Fee | | $0.05 |
| **PATIO & OUTDOOR DECOR** | | | |
| 009114906 | Threshold | T | $14.00 |
| | 2 @ $7.00 ea | | |
| | Regular Price $10.00 | | |
| | SUBTOTAL | | $42.22 |
| | Target Circle Rewards | | $15.00 - |
| | Target Circle Card 5% | | $1.36 - |
| | T = NY TAX 7.00000 on $10.39 | | $0.73 |
| | TOTAL | | $26.59 |
| | *0863 TARGET DEBIT CARD | | $26.59 |

Discover Buy Again Wallet 19 Cart My Target

*Figure 1-Target Receipt*

16. Before purchasing, Ms. Sobon read the front of the package and understood the statement “AVOCADO OIL” to mean that the oil used to cook the chips was avocado oil. She purchased the Product on that basis.

17. Ms. Sobon would not have purchased the Product, or would not have paid the price she paid, had she known that the oil in it was not compositionally consistent with avocado oil. She continues to shop at the retailer where the Product is sold, wishes to purchase potato chips cooked in avocado oil, and would purchase the Product again if the representation on the package were accurate. She cannot determine whether the representation is accurate by reading the package or by inspecting the chips, and she therefore remains unable to rely on Defendants' representation.

18. Defendant Utz Quality Foods, LLC, formerly known as Utz Quality Foods, Inc., is organized under the laws of the State of Delaware with its principal place of business at 900 High Street, Hanover, Pennsylvania 17331. Utz Quality Foods, LLC manufactures, markets, distributes, and sells the Product throughout the United States, including in California and New York.

19. Defendant Utz Brands, Inc. is a Delaware corporation with its principal place of business at 900 High Street, Hanover, Pennsylvania 17331. Utz Brands, Inc. is the parent of Utz Quality Foods, LLC and is a manufacturer, marketer, and distributor of the Product.

20. Defendants own the Boulder Canyon brand and control the content of the Product's packaging, labeling, and marketing, including the representations at issue in this action. Defendants are referred to together as "Defendants."

## JURISDICTION AND VENUE

21. **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed Class, and at least one member of the proposed Class is a citizen of a State different from Defendants. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

22. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants because Defendants market, distribute, and sell the Product into this District through national and regional retail grocery channels, derive substantial revenue from sales in this District, and directed the representations at issue at consumers in this District. Plaintiff Sanchez purchased the Product in this District, and his claims arise directly out of Defendants' contacts with this District.

23. **Venue.** Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims, including Plaintiff Sanchez's purchases of the Product and his resulting injury, occurred in this District.

## FACTUAL ALLEGATIONS

### I. Avocado Oil Commands a Price Premium

24. Avocado oil occupies the premium end of the retail cooking oil market. It is produced from the flesh of the avocado fruit rather than from seeds, and it is marketed and understood as a less processed alternative to refined vegetable and seed oils.

25. Consumer demand for avocado oil has grown alongside consumer resistance to refined vegetable and seed oils, including canola, corn, soybean, and sunflower oil. A segment of consumers now avoids those oils and pays more for products that do not contain them.

26. Manufacturers respond to that demand by placing the words "avocado oil" on the front of the package, where the words function as a premium quality signal rather than as a mere ingredient disclosure.

27. The premium is measurable. The researchers who analyzed the Product recorded prices for the chip products in their sample ranging from approximately $0.30 to $2.00 per ounce for avocado-oil-labeled chips, against approximately $0.44 to $0.62 per ounce for comparable chips labeled as fried in vegetable oil.[6]

28. A consumer cannot verify the identity of the oil used to cook potato chips. The oil is not visible, it cannot be identified by taste, and it can be identified only by laboratory analysis of the fatty acid and sterol profile of the oil recovered from the chip. Consumers are therefore entirely dependent on the accuracy of the manufacturer's representation.

29. A voluntary third-party certification for seed oil-free products exists and is available to manufacturers who wish to substantiate such claims. The chip products the researchers analyzed, including the Product, carried no such certification.[7]

**II. Defendant and the Product**

30. Defendants manufacture, market, and sell snack food products under a portfolio of brands, including Boulder Canyon.

31. The Product at issue is Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips, sold in a 5.25-ounce package. Its ingredient statement reads, in full: "Potatoes, Avocado Oil, Sea Salt."[8]

---

[6] Natalie Lopez-Alvarez et al., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Appl. Food Rsch. 102389, § 3.1 & tbl. 1, at 4 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last visited September 16, 2026).

[7] *Id.* § 3.1, at 4.

32. Avocado oil is the only oil named on the label. No other oil of any kind appears on the package.

33. The Product is sold in retail grocery and mass merchandise channels throughout the United States, including at Target stores in New York and at Whole Foods Market and Sprouts Farmers Market stores in California. Defendants also sell the Product line directly to consumers through the retail website they operate at utzsnacks.com.[9]

**III. Defendants' Representations About the Oil in the Product**

34. The front of the Product's package carries the words "AVOCADO OIL" in large capital letters set in a contrasting banner, positioned above the flavor designation "CLASSIC SEA SALT" and the words "KETTLE STYLE POTATO CHIPS." The front panel of the Product is reproduced at Figure 2.

[8] *Avocado Oil Classic Sea Salt Kettle Chips*, BOULDER CANYON, https://www.bouldercanyon.com/products/boulder-canyon-avocado-oil-sea-salt-kettle-chips (last visited September 16, 2026). See also *Boulder Canyon Kettle Potato Chips Canyon Cut Avocado Oil Sea Salt*, UTZ QUALITY FOODS, https://www.utzsnacks.com/products/boulder-canyon-avocado-oil-canyon-cut-kettle-potato-chips-sea-salt (last visited September 16, 2026). (listing the identical ingredient statement for the Canyon Cut version of the Product).

[9] *Boulder Canyon Kettle Potato Chips Canyon Cut Avocado Oil Sea Salt*, UTZ QUALITY FOODS, https://www.utzsnacks.com/products/boulder-canyon-avocado-oil-canyon-cut-kettle-potato-chips-sea-salt (last visited September 16, 2026).




*Figure 2. Front panel of the Product.*[10] *The package reads "BOULDER CANYON" above "AVOCADO OIL," above "CLASSIC SEA SALT," above "KETTLE STYLE POTATO CHIPS."*

35. The placement, size, and prominence of the words "AVOCADO OIL" on the front panel convey to a reasonable consumer that the oil used to cook the chips is avocado oil. The words appear in the position on the package where a consumer looks for the product's defining characteristic, and they are more prominent than the flavor designation.

36. The back of the package repeats the representation in the ingredient statement, which names avocado oil and no other oil. The ingredient statement panel is reproduced at Figure 3.

---

[10] *Avocado Oil Classic Sea Salt Kettle Chips*, BOULDER CANYON, https://www.bouldercanyon.com/products/boulder-canyon-avocado-oil-sea-salt-kettle-chips (last visited September 16, 2026).




*Figure 3. Ingredient statement and Nutrition Facts panel of the Product.*[11]

37. Defendants make the same representation in their marketing of the Product, including on the Boulder Canyon brand website and in retail and digital advertising.

38. The Boulder Canyon website devotes a page, titled "Our Way," to Defendants' ingredient and sourcing practices. The page contains the heading "Real Ingredients. Real Standards. That's the Boulder Canyon Way." Defendants further represent: "Our products made with avocado oil, olive oil and beef tallow are made exclusively with the oil or fat identified on the label — they are not mixed or blended with other oils or fats."[12]

---

[11] *Boulder Canyon Kettle Potato Chips Canyon Cut Avocado Oil Sea Salt*, UTZ QUALITY FOODS, https://www.utzsnacks.com/products/boulder-canyon-avocado-oil-canyon-cut-kettle-potato-chips-sea-salt?variant=40549770985516 (last visited September 16, 2026).

[12] *Our Way*, BOULDER CANYON, https://www.bouldercanyon.com/our-way (last visited September 16, 2026).

39. On the same page, Defendants represent that they "work with carefully selected, trusted suppliers and maintain rigorous supplier qualification and evaluation processes," that their "suppliers test the oil and tallow they provide us," and that "every lot used in our production is accompanied by a certificate of analysis."[13]

40. On the retail website Defendants operate at utzsnacks.com, Defendants describe the chips as "crafted with care, using high-quality ingredients to deliver a delicious and wholesome snacking experience." Defendants describe the chips as "cooked in avocado oil," with "Simple Ingredients: Made with premium potatoes, avocado oil, and a touch of sea salt." Defendants market the chips to "Health-Conscious Snackers" as "Ideal for those looking for a delicious snack made with better-for-you ingredients."[14]

41. In January 2026, Defendants launched "Be for Real," the first national advertising campaign for the Boulder Canyon brand. Defendants' announcement described Boulder Canyon as "America's fastest growing salty snack brand," identified the Product line among the campaign's featured items, and stated that the campaign celebrates "the brand's commitment to real, simple ingredients — including potatoes grown in North America, avocado oil, and sea salt."[15] In the same announcement, the senior vice president of marketing of Defendant Utz Quality Foods, LLC stated: "We're inviting consumers to find moments of authenticity in their daily lives, just as we've stayed true to using only select ingredients in our snacks for more than 30 years."[16]

---

[13] *Id.*
[14] *Boulder Canyon Kettle Potato Chips Canyon Cut Avocado Oil Sea Salt*, UTZ QUALITY FOODS, https://www.utzsnacks.com/products/boulder-canyon-avocado-oil-canyon-cut-kettle-potato-chips-sea-salt (last visited September 16, 2026).
[15] Press Release, *Boulder Canyon Launches "Be for Real" Campaign Celebrating Real Ingredients and Real Moments*, UTZ QUALITY FOODS (Jan. 8, 2026), https://www.utzsnacks.com/blogs/news/boulder-canyon-launches-be-for-real-campaign-celebrating-real-ingredients-and-real-moments (last visited September 16, 2026).
[16] *Id.*

42. Boulder Canyon is one of the four brands Defendants describe to investors as their "Power Four," together with Utz, On The Border, and Zapp's. Defendants reported that the Power Four brands led their retail sales growth in fiscal year 2025, with Power Four retail sales increasing 5.3 percent in the fourth quarter, and that continued Power Four growth leads Defendants' outlook for fiscal year 2026.[17]

43. The representation is uniform. Every package of the Product sold during the Class Period carried the front panel statement "AVOCADO OIL" and an ingredient statement naming avocado oil and no other oil. Every purchaser of the Product was therefore exposed to the same representation.

**IV. The University of California, Davis Analysis**

44. In 2026, chemists in the Department of Food Science and Technology at the University of California, Davis published a peer-reviewed study evaluating whether the avocado oil and olive oil declared as ingredients in commercially processed foods was compositionally consistent with the authentic named oil.[18]

45. The study was accepted on July 10, 2026, and made available online on July 11, 2026. The University publicized the results in a news release dated July 15, 2026[19] and published a product-level list of the samples tested on July 17, 2026.[20]

---

[17] Press Release, *Utz Brands Reports Fourth Quarter and Full Year 2025 Results*, UTZ QUALITY FOODS (Feb. 12, 2026), https://www.utzsnacks.com/blogs/news/utz-brands-reports-fourth-quarter-and-full-year-2025-results (last visited September 16, 2026).

[18] Natalie Lopez-Alvarez *et al.*, *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Appl. Food Rsch. 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last visited September 16, 2026).

[19] Amy Quinton, *That Avocado Oil Chip You're Eating May Not Be Made With Pure Avocado Oil*, UNIV. OF CAL., DAVIS (July 15, 2026), https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil (last visited September 16, 2026).

[20] *Studied products AFRES.pdf*, UNIV. OF CAL., DAVIS MEDIA KIT: AVOCADO OIL FOODS (July 17, 2026), https://ucdavis.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u (last visited August 21, 2026).

46. The researchers analyzed seventy-four samples drawn from thirty-seven commercially available products. For each product they obtained two separate production lots, and they analyzed each lot in duplicate.[21]

47. The researchers purchased the tested products in 2025 and 2026 from online retailers and from retail stores in California.[22]

48. The researchers extracted the oil from each product and determined its fatty acid and sterol composition, then compared the results against the compositional ranges for authentic avocado oil and olive oil set out in the Codex Alimentarius standards for named vegetable oils and for olive oils, Codex Standards CXS 210-1999 and CXS 33-1981.[23]

49. The classification criteria were conservative. The researchers applied a tolerance to the Codex ranges and adopted rules that resolved borderline results in favor of a finding of consistency, so that a product was classified as inconsistent only where the deviation from the authentic profile could not be attributed to natural variation.[24]

50. The researchers separately confirmed that the frying process itself does not account for the deviations they observed. In controlled frying experiments using authentic avocado oil, individual fatty acids changed by less than 0.6 percent, and cis-vaccenic acid changed by 0.1 percent.[25]

---

[21] Natalie Lopez-Alvarez *et al.*, *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Appl. Food Rsch. 102389, § 2.1, at 2 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last visited September 16, 2026).

[22] Amy Quinton, *That Avocado Oil Chip You're Eating May Not Be Made With Pure Avocado Oil*, UNIV. OF CAL., DAVIS (July 15, 2026), https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil (last visited September 16, 2026).

[23] *Id.* § 2.4, at 3.

[24] *Id.* § 2.4, at 3.

[25] *Id.* § 3.4 & tbl. 2, at 7–8.

51. The University of California, Davis published a product-level list identifying every sample by number, brand, and product name, and stating for each whether the sample was compositionally consistent with the authentic named oil.[26]

52. The Product appears on that list. Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips were tested as Sample Nos. 1 and 2, each representing a separate production lot.[27]

53. Neither tested lot of the Product was compositionally consistent with avocado oil.[28]

54. The Product was not an outlier. Of the twenty-eight avocado oil-labeled chip samples the researchers tested, twenty-six, or ninety-three percent, were classified as inconsistent with authentic avocado oil, and eighty-nine percent of avocado oil-labeled products across all categories in the study exhibited compositional patterns inconsistent with authentic avocado oil.[29] The pattern held across product categories. Ninety-three percent of the avocado oil-labeled chips, seventy-one percent of the avocado oil-labeled mayonnaises, and one hundred percent of the avocado oil-labeled salad dressings tested contained oils other than the labeled oil. When the researchers applied the same tests to twenty olive oil-labeled processed foods, only one failed.[30]

---

[26] *Studied products AFRES.pdf*, UNIV. OF CAL., DAVIS MEDIA KIT: AVOCADO OIL FOODS (July 17, 2026), https://ucdavis.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u (last visited September 16, 2026).

[27]

[28] *Id.*

[29] Natalie Lopez-Alvarez *et al.*, *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Appl. Food Rsch. 102389, § 3.1 & tbl. 1, at 3–4 (2026), https://doi.org/10.1016/j.afres.2026.102389 (last visited September 16, 2026); *id. at* 1 (Abstract).

[30] Amy Quinton, *That Avocado Oil Chip You're Eating May Not Be Made With Pure Avocado Oil*, UNIV. OF CAL., DAVIS (July 15, 2026), https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil (last visited September 16, 2026).

55. The failures share a signature. The oils recovered from the inconsistent avocado oil-labeled products were characterized by reduced palmitic acid, palmitoleic acid, cis-vaccenic acid, beta-sitosterol, and clerosterol, and by elevated stearic acid, campesterol, stigmasterol, delta-7-stigmastenol, and delta-7-avenasterol. That pattern is consistent with substitution or dilution using refined vegetable and seed oils rather than with authentic avocado oil.[31]

56. Cis-vaccenic acid, a key discriminatory marker that is characteristically elevated in avocado oil relative to common vegetable oils, told the same story. Samples classified as consistent with authentic avocado oil averaged 5.3 percent plus or minus 1.0 percent cis-vaccenic acid, while inconsistent samples averaged 1.7 percent plus or minus 0.5 percent, a difference the researchers reported as statistically significant.[32]

57. Principal component analysis of the fatty acid and sterol profiles demonstrated clear separation between samples classified as consistent and inconsistent with their labeled oil, and the inconsistent samples clustered near the refined vegetable oil comparators, including canola, corn, soybean, and sunflower oil.[33]

58. The 2026 analysis was not the first report of adulteration in the avocado oil supply. Researchers at the University of California, Davis previously reported widespread quality and purity failures in retail avocado oils sold in the United States, and a subsequent study reported similar failures in private label avocado oils.[34]

---

[31] *Id.* at 1 (Abstract); *id.* § 3.2, at 4.
[32] *Id.* § 3.3.2, at 7.
[33] *Id.* § 3.3.1, at 6–7
[34] Hilary S. Green & Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, 116 Food Control 107328 (2020), https://doi.org/10.1016/j.foodcont.2020.107328 (last visited September 16, 2026).

59. Defendants are sophisticated manufacturers of snack food products. They source the oil used to cook the Product, they contract for its supply, and they control the specifications against which that oil is purchased and accepted. Defendants knew or should have known the composition of the oil they used, and they knew or should have known that the avocado oil supply had been the subject of published adulteration findings.

60. Defendants publicly represent that their avocado oil products are made exclusively with the oil identified on the label, that they maintain rigorous supplier qualification and evaluation processes, that their suppliers test the oil they supply, and that every lot of oil used in production is accompanied by a certificate of analysis. If those representations are accurate, Defendants possessed lot-level documentation of the composition of the oil used to cook the Product. If Defendants did not obtain or review that documentation, their representations about their quality assurance practices were themselves false or misleading. [35]

**V. The Economic Injury to Plaintiffs and the Class**

61. The identity of the oil used to cook the Product is material to reasonable consumers. Consumers who seek out avocado oil do so deliberately, and they pay more for it.

62. The study's lead author Selina Wang made the same point when the results were announced: "Consumers are increasingly paying a premium for products made with avocado oil or olive oil. They deserve to get what they pay for and food manufacturers deserve confidence that the ingredients they purchase from suppliers are authentic."[36]

63. Plaintiff Sobon paid $4.69 for a 5.25oz package of the Product. Comparable kettle style potato chips fried in refined vegetable oil sell for materially less.

---

[35] *Our Way*, BOULDER CANYON, https://www.bouldercanyon.com/our-way (last visited September 16, 2026).

[36] Amy Quinton, *That Avocado Oil Chip You're Eating May Not Be Made With Pure Avocado Oil*, UNIV. OF CAL., DAVIS (July 15, 2026), https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil (last visited September 16, 2026).

64. At $4.69 for a 5.25-ounce package, Plaintiff Sobon paid approximately $0.89 per ounce. That price sits well above the range of approximately $0.44 to $0.62 per ounce that the researchers recorded for comparable chips labeled as fried in vegetable oil, and within the premium range commanded by avocado oil-labeled chips. Defendants' own direct pricing is comparable. Defendants' retail website offers the Canyon Cut version of the Product at a regular price of $28.49 for six 5.25-ounce bags, approximately $0.90 per ounce.[37]

65. Consumers state the point on Defendants' own retail website. A verified purchaser review posted on the utzsnacks.com listing for the Canyon Cut version of the Product is titled "great choice for those with seed oil allergy" and reports that the purchaser bought the chips for a child who "can't do the standard seed oils."[38]

66. Plaintiffs and the members of the Class paid a premium for the Product that they would not have paid had Defendants disclosed that the oil in the Product was not compositionally consistent with avocado oil.

67. The composition of the oil in the Product is material to reasonable consumers. Had Defendants disclosed the truth, a reasonable consumer would not have bought the Product at the price Defendants charged for it.

68. The measure of their loss is the difference between the price they paid and the value of what they actually received, or in the alternative the difference between what they paid and what they would have received had Defendants' statements been true.

---

[37] *Boulder Canyon Kettle Potato Chips Canyon Cut Avocado Oil Sea Salt*, UTZ QUALITY FOODS, https://www.utzsnacks.com/products/boulder-canyon-avocado-oil-canyon-cut-kettle-potato-chips-sea-salt (last visited September 16, 2026).

[38] *Boulder Canyon Kettle Potato Chips Canyon Cut Avocado Oil Sea Salt*, UTZ QUALITY FOODS, https://www.utzsnacks.com/products/boulder-canyon-avocado-oil-canyon-cut-kettle-potato-chips-sea-salt (last visited September 16, 2026). (customer review).

69. Defendants have not corrected their representations. Consumers continue to encounter the same front panel statement and the same ingredient statement on the Product, and they remain unable to verify the composition of the oil without laboratory analysis.

70. Defendants continued to sell the Product bearing the representation "AVOCADO OIL" after the analysis described above was published and publicized, and they continue to do so as of the filing of this Complaint. As of September 11, 2026, the Boulder Canyon website continued to represent that Defendants' products made with avocado oil "are made exclusively with the oil or fat identified on the label" and "are not mixed or blended with other oils or fats."[39]

**TOLLING OF THE STATUTE OF LIMITATIONS**

71. The composition of the oil used to cook a potato chip is not ascertainable by a purchaser. It is not disclosed on the package, and it cannot be detected by inspection or taste. Plaintiffs and the members of the Class had no way to learn the facts alleged here until the analysis described above was published.

72. Under the delayed discovery rule, a cause of action does not accrue until the plaintiff has reason to suspect an injury and some wrongful cause. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005). Any applicable limitations period was therefore tolled until July 11, 2026, when the study was published, and no member of the Class was on inquiry notice of the facts alleged here before that date.

---

[39] *Our Way*, BOULDER CANYON, https://www.bouldercanyon.com/our-way (last visited September 16, 2026); *see also Details*, BOULDER CANYON, https://www.bouldercanyon.com/products/boulder-canyon-avocado-oil-sea-salt-kettle-chips (last visited September 16, 2026).

73. Any applicable limitations period is further tolled by Defendants' fraudulent concealment. Defendants represented that the oil in the Product was avocado oil, did not disclose that the oil was not compositionally consistent with avocado oil, and were in exclusive possession of the facts concerning the oil they sourced and used. Defendants are estopped from asserting any limitations defense on the basis of a delay their own concealment caused.

## CLASS ACTION ALLEGATIONS

74. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), on behalf of the following Nationwide Class:

All persons in the United States who purchased the Product for personal, family, or household use during the Class Period.

75. Plaintiff Sanchez also brings this action on behalf of the following California Subclass:

All persons who purchased the Product in California for personal, family, or household use during the Class Period.

76. Plaintiff Sobon also brings this action on behalf of the following New York Subclass:

All persons who purchased the Product in New York for personal, family, or household use during the Class Period.

77. "The Product" means Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips, and no other product. The Class and Subclasses are defined by reference to that product only. They do not extend to any other product Defendants sell, including any product the analysis described above did not reach.

78. "The Class Period" means the period from July 11, 2022, through the present.

79. Excluded from the Class and Subclasses are Defendants; any entity in which Defendants have a controlling interest; Defendants' officers, directors, members, and employees and their immediate families; the judicial officers assigned to this case and their staff and immediate families; and any person who purchased the Product for resale.

80. **Numerosity.** The members of the Class and Subclasses are so numerous that joinder of all members is impracticable. The Product is sold through retail grocery and mass merchandise channels nationally. The members of the Class number, at minimum, in the tens of thousands and are geographically dispersed throughout California, New York, and the United States.

81. **Commonality.** Questions of law and fact common to the Class include:

a. whether the oil in the Product is compositionally consistent with avocado oil;

b. whether Defendants' statements that the Product is made with avocado oil are false or misleading;

c. whether Defendants' ingredient statements are false or misleading;

d. whether those statements are material to a reasonable consumer;

e. whether Defendants knew or should have known that the oil in the Product was not compositionally consistent with avocado oil;

f. whether Defendants' conduct violates the statutes and common law rules invoked below;

g. whether the members of the Class paid a price premium attributable to the representations at issue, and the amount of that premium; and;

h. whether the members of the Class are entitled to damages, restitution, and injunctive relief.

82. **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses. Plaintiffs purchased the Product, were exposed to the same representations on the same packaging, and suffered the same injury in the same manner as every other member of the Class.

83. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs have no interests antagonistic to the interests of the members of the Class and Subclasses, and they have retained counsel experienced in the prosecution of consumer class actions. Plaintiff Sanchez has been proposed as a class representative in one other consumer class action unrelated to the subject matter of this action, and that role does not conflict with his duties here.

84. **Predominance and Superiority.** Questions of law and fact common to the Class and Subclasses predominate over any questions affecting only individual members. The representations at issue are uniform, they appear on every package, and their truth or falsity is determined by laboratory analysis rather than by any individual member's circumstances. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual member of the Class are small relative to the cost of individual litigation, and no member of the Class could economically pursue an individual action.

85. **Ascertainability.** The members of the Class and Subclasses are ascertainable. Defendants and the retailers through which the Product is sold maintain records of sales volumes and distribution. Many purchasers are identifiable through retailer loyalty program records, payment card records, and online order histories. The remaining members of the Class, including the Subclasses, may be identified through a claim form process of the kind routinely approved in consumer class actions.

86. **Rule 23(b)(2).** Defendants have acted on grounds generally applicable to the Class by printing the same representation on every package of the Product, making final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole.

**CLAIMS FOR RELIEF**

**COUNT I**

**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff Sanchez and the California Subclass)**

87. Plaintiff Albert Sanchez realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

88. The California Unfair Competition Law prohibits any unlawful, unfair, or fraudulent business act or practice, and any unfair, deceptive, untrue, or misleading advertising. Cal. Bus. & Prof. Code § 17200.

89. Claims under the Unfair Competition Law are governed by the reasonable consumer standard, which asks whether members of the public are likely to be deceived. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

90. Defendants' representation that the Product is made with avocado oil is false and misleading. The oil in the Product is not compositionally consistent with avocado oil.

91. Defendants' conduct is fraudulent because the representation is likely to deceive a reasonable consumer, and a reasonable consumer is not required to look past the front label to an ingredient statement to discover that the front label is false. *Id.* at 939–40. The ingredient statement here would not have corrected the impression in any event, because it names avocado oil and no other oil.

92. Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, and substantially injurious to consumers, and because the harm it causes consumers outweighs any utility of the practice.

93. Defendants' conduct is unlawful because it violates the California False Advertising Law and the Consumers Legal Remedies Act as alleged below, and because it violates the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.*, which prohibits the misbranding of food.

94. Plaintiff Sanchez and the members of the California Subclass suffered injury in fact and lost money or property as a result of Defendants' conduct. They paid a price premium for the Product that they would not have paid had the truth been disclosed.

95. Plaintiff Sanchez seeks restitution, injunctive relief, and all other relief available under Cal. Bus. & Prof. Code § 17203.

**COUNT II**
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of Plaintiff Sanchez and the California Subclass)**

96. Plaintiff Albert Sanchez realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

97. The California False Advertising Law prohibits the dissemination of any statement concerning goods or services that is untrue or misleading, and that is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

98. Defendants disseminated the representation that the Product is made with avocado oil through the Product's packaging, labeling, and advertising, with the intent to induce consumers to purchase the Product.

99. The representation is untrue and misleading, and Defendants knew or by the exercise of reasonable care should have known that it was untrue and misleading. Defendants sourced the oil used to cook the Product and controlled the specifications against which it was purchased.

100. Plaintiff Sanchez and the members of the California Subclass suffered injury in fact and lost money or property as a result. Plaintiff Sanchez seeks restitution, injunctive relief, and all other relief available under Cal. Bus. & Prof. Code § 17535.

**COUNT III**
**Violation of the California Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff Sanchez and the California Subclass)**

101. Plaintiff Albert Sanchez realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

102. The Product is a good, and Plaintiff Sanchez and the members of the California Subclass are consumers, within the meaning of Cal. Civ. Code § 1761. Plaintiff Sanchez's purchases of the Product were transactions within the meaning of Cal. Civ. Code § 1761(e).

103. Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that the Product has characteristics and ingredients that it does not have; § 1770(a)(7) by representing that the Product is of a particular standard, quality, or grade when it is of another; § 1770(a)(9) by advertising the Product with intent not to sell it as advertised; and § 1770(a)(16) by representing that the Product has been supplied in accordance with a previous representation when it has not.

104. Plaintiff Sanchez and the members of the California Subclass suffered damage as a result of Defendants' violations. They paid a price premium for a product that was not what Defendants represented.

105. On September 16, 2026, Plaintiff Sanchez provided Defendants with written notice of the violations alleged in this Count by certified mail, return receipt requested, in compliance with Cal. Civ. Code § 1782(a). Plaintiff Sanchez presently seeks injunctive relief under Cal. Civ. Code § 1782(d) and will seek damages under this Count on expiration of the thirty-day period set out in Cal. Civ. Code § 1782(a) if Defendants fail to provide appropriate relief.

106. Concurrently with the filing of this Complaint, Plaintiff Sanchez files the affidavit of venue required by Cal. Civ. Code § 1780(d).

**COUNT IV**
**Violation of New York General Business Law § 349**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiff Sobon and the New York Subclass)**

107. Plaintiff Mary Sobon realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

108. New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce in the State of New York. To state a claim, a plaintiff must allege that the defendant engaged in consumer-oriented conduct that was materially misleading and that the plaintiff suffered injury as a result. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

109. Justifiable reliance is not an element of a claim under General Business Law § 349. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941–42 (2012).

110. Defendants' conduct was consumer oriented. Defendants printed the representation at issue on every package of the Product and sold the Product to the general public through retail channels throughout New York.

111. Defendants' conduct was materially misleading. A reasonable consumer acting reasonably under the circumstances would understand the front panel statement "AVOCADO OIL" to mean that the oil used to cook the chips is avocado oil, and the oil in the Product is not compositionally consistent with avocado oil.

112. Plaintiff Sobon and the members of the New York Subclass suffered injury as a result. They paid a price premium for the Product that they would not have paid had the truth been disclosed.

113. Plaintiff Sobon seeks actual damages or statutory damages of fifty dollars per violation, whichever is greater, treble damages up to one thousand dollars for Defendants' willful and knowing violations, injunctive relief, and reasonable attorneys' fees under N.Y. Gen. Bus. Law § 349(h).

**COUNT V**
**Violation of New York General Business Law § 350**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Sobon and the New York Subclass)**

114. Plaintiff Mary Sobon realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

115. New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce in the State of New York. Advertising is false where it is misleading in a material respect, taking account of representations made and material facts omitted. N.Y. Gen. Bus. Law § 350-a(1).

116. Justifiable reliance is not an element of a claim under General Business Law § 350. *Koch*, 18 N.Y.3d at 941–42.

117. The Product's packaging, labeling, and advertising constitute advertising within the meaning of the statute, and they are misleading in a material respect for the reasons alleged above.

118. Plaintiff Sobon and the members of the New York Subclass suffered injury as a result and seek actual damages or statutory damages of five hundred dollars per violation, whichever is greater, treble damages, injunctive relief, and reasonable attorneys' fees under N.Y. Gen. Bus. Law § 350-e(3).

**COUNT VI**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class)**

119. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

120. Defendants' front panel statement "AVOCADO OIL" and the ingredient statement naming avocado oil and no other oil are affirmations of fact and descriptions of the goods that became part of the basis of the bargain between Defendants and every purchaser of the Product.

121. Defendants thereby expressly warranted that the oil used to cook the Product is avocado oil.

122. Defendants breached that warranty. The oil in the Product is not compositionally consistent with avocado oil.

123. On September 16, 2026, Plaintiffs provided Defendants with written notice of the breach alleged in this Count. Notice is further excused or satisfied because Defendants had actual knowledge of the defect in the Product through their own sourcing and specification of the oil, because the analysis described above was published and widely publicized, and because Plaintiffs are not in privity with Defendants and had no reasonable means of providing earlier notice.

124. Plaintiffs and the members of the Nationwide Class suffered damages as a direct and proximate result of the breach in the amount of the price premium they paid.

**COUNT VII**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs and the Nationwide Class)**

125. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

126. Defendants are merchants with respect to goods of the kind at issue, and the Product was sold subject to the implied warranty of merchantability.

127. The Product was not merchantable because it did not conform to the promises and affirmations of fact made on its container and label, which represented that the oil used to cook the chips is avocado oil.

128. Lack of privity does not bar this claim. Plaintiffs are the intended beneficiaries of Defendants' warranties, Defendants' warranties were directed to consumers rather than to intermediate retailers, and Defendants' representations were made on the packaging that reached Plaintiffs unaltered.

129. Plaintiffs and the members of the Nationwide Class suffered damages as a direct and proximate result of the breach in the amount of the price premium they paid.

**COUNT VIII**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

130. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

131. Plaintiffs and the members of the Nationwide Class conferred a benefit on Defendants by purchasing the Product at a price inflated by Defendants' representations.

132. Defendants appreciated and retained that benefit. Defendants received revenue attributable to a representation that was not true.

133. It would be inequitable and unjust for Defendants to retain the benefit conferred. Plaintiffs seek restitution and disgorgement of the amounts by which Defendants were unjustly enriched.

**COUNT IX**
**Fraud**
**(On Behalf of Plaintiffs and the Nationwide Class)**

134. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

135. Defendants Utz Quality Foods, LLC and Utz Brands, Inc., which own the Boulder Canyon brand and control the content of the Product's packaging, labeling, and marketing.

136. The representation that the oil used to cook the Product is avocado oil, made through the front panel statement "AVOCADO OIL" and through an ingredient statement naming avocado oil and no other oil.

137. On the front and back panels of every package of the Product, and in Defendants' advertising and marketing of the Product.

138. Throughout the Class Period, including on the date of each of Plaintiffs' purchases, and continuing through the filing of this Complaint.

139. The representation is false because the oil in the Product is not compositionally consistent with avocado oil, as the analysis of two separate production lots established.

140. Defendants knew the representation was false, or made it recklessly without regard for its truth. Defendants sourced the oil, contracted for its supply, and controlled the specifications against which it was purchased and accepted, and they were aware of published findings of adulteration in the avocado oil supply.

141. Defendants made the representation with the intent that consumers rely on it in deciding whether to purchase the Product and how much to pay for it.

142. Plaintiffs read the representation and relied on it in purchasing the Product. Their reliance was justifiable. The composition of the oil could not be verified by inspection, taste, or any other means available to a consumer.

143. Plaintiffs and the members of the Nationwide Class were damaged as a direct and proximate result in the amount of the price premium they paid. Defendants' conduct was willful, and Plaintiffs seek punitive damages

**COUNT X**
**Negligent Misrepresentation**
**(On Behalf of Plaintiffs and the Nationwide Class)**

144. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

145. Defendants had a duty to exercise reasonable care in making representations about the composition of the Product and were in a position of superior knowledge concerning the oil they sourced and used.

146. Defendants represented that the oil used to cook the Product is avocado oil. That representation was false.

147. Defendants failed to exercise reasonable care in ascertaining the truth of the representation before making it and in continuing to make it.

148. Plaintiffs and the members of the Nationwide Class justifiably relied on the representation and were damaged as a direct and proximate result in the amount of the price premium they paid.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class and Subclasses, respectfully request that the Court:

a. Certify the Nationwide Class, the California Subclass, and the New York Subclass under Federal Rule of Civil Procedure 23, appoint Plaintiffs as class representatives, and appoint their counsel as class counsel;

b. Declare that Defendants' conduct violates the statutes and common law rules invoked above;

c. Award compensatory damages in an amount to be determined at trial;

d. Award statutory and treble damages as provided by N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3);

e. Award restitution and disgorgement of the amounts by which Defendants were unjustly enriched;

f. Award punitive damages;

g. Enjoin Defendants from representing that the Product is made with avocado oil unless the oil used to cook the Product is avocado oil, and order such corrective disclosure as the Court deems appropriate;

h. Award pre-judgment and post-judgment interest;

i. Award reasonable attorneys' fees, expenses, and costs of suit; and

j. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: September 16, 2026

Respectfully submitted,

*/s/Jason M. Ingber*

Jason M. Ingber (SBN 318323)
**LEVI & KORSINSKY, LLP**
3580 Wilshire Boulevard, Suite 1260
Los Angeles, California 90010-2513
Telephone: (213) 805-8373
Email: jingber@zlk.com

Mark Jensen*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mjensen@zlk.com

**pro hac vice* forthcoming

*Counsel for Plaintiffs*